(Not for Publication)                                              (Docket No. 11, 12)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                          :
HECTOR L. HUERTAS,                        :
                                          :
                    Plaintiff,            :        Civil No. 06-1430(RBK)
                                          :
        v.                                :        **OPINION**
                                          :
AMERITRADE, INC.,                         :
                                          :
                    Defendant.            :
_____          :

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Defendant Ameritrade

("Ameritrade") to set aside this Court's entry of default judgment for pro se Plaintiff Hector L.

Huertas ("Plaintiff") pursuant to Federal Rule of Civil Procedure 55(c).  Also before the Court is

Ameritrade's motion to compel arbitration of this matter.  In addition, Plaintiff moves for partial

reconsideration of this Court's Order dated June 26, 2007, denying Plaintiff's claim under SEC

Rule 10b-5. For the reasons set forth below, the Court will grant Ameritrade's motions. Because

the Court sets aside the default judgment and compels arbitration, the Court accordingly denies

Plaintiff's motion for reconsideration as moot.

## I.  BACKGROUND

Plaintiff opened an account with Ameritrade in October 2003.  On or about April 16,

2004, Plaintiff signed an application to permit Plaintiff to trade options in his Ameritrade

account.

Plaintiff alleges that on March 15, 2005, he bought twenty Yahoo option contracts at $.75 each.  On March 16, 2005, Plaintiff sold the Yahoo contracts at $.55 each.  On March 17, 2005, Plaintiff alleges that he "noticed numerous duplicate transactions" dated March 16, 2005 on his Ameritrade account.  Plaintiff subsequently contacted Ameritrade to inquire about the duplicate transactions, and a customer service representative informed Plaintiff that the posted transactions resulted from commission fee adjustments.

Plaintiff further alleges that on March 17, Plaintiff "noticed that someone had sold short a position of [five] . . . Yahoo option contracts at" $.60 and "a position of [fifteen]" Yahoo option contracts at $.65.  Plaintiff alleges that he "close[d] that position by buying" twenty Yahoo option contracts at $.80, incurring a loss of $377.03.  Plaintiff alleges he again contacted Ameritrade customer service, at which time a representative informed Plaintiff that the system showed that the Plaintiff accidentally placed the short sale by placing duplicate transactions.  Plaintiff alleges that he informed the Ameritrade representative his account was not authorized for short trading, therefore he could not have authorized these transactions.

On March 23, 2005, Plaintiff placed an order for "[twelve] Google April 190 call option contracts."  On March 24, 2005, Plaintiff noticed his account was "at a loss," despite a considerable increase in the Google share price. Plaintiff alleges that "someone" bought Google shares on March 23, 2005 at $1.90 and closed them on March 24 at $1.55.  Plaintiff also noticed that "someone" purchased eight Google call option contracts on March 24 at $2.25. Plaintiff states that, "in the confusion," he closed eight Google call option contracts at $1.80.  Plaintiff alleges that this series of transactions caused him a loss of $854.08.

On March 26, 2005, Plaintiff contacted Ameritrade customer service to inquire about who

engaged in the transactions.  Plaintiff indicates that he became "enraged" during the conversation when the representative transferred Plaintiff to technical support.  Plaintiff states that Ameritrade restricted his account access, and Plaintiff cannot withdraw funds without a signed, written authorization letter.

Plaintiff alleges "realized" losses of $1,231.11.  In addition, Plaintiff alleges that this series of events "discouraged" him from monitoring his account, and he sustained further losses as a result.

On March 27, 2006, Plaintiff filed a complaint in United States District Court for the District of New Jersey, alleging that Ameritrade violated Sections 9b and 10b of the Securities Exchange Act of 1934 ("SEC"), and SEC Rule 10b-5.  Plaintiff also claims breach of contract. Plaintiff seeks "declaratory and injunctive relief concerning future deterrence" of his day-trading activities, as well as monetary damages.  The docket reflects that Ameritrade failed to enter an appearance, much less file a response or answer, even though Plaintiff effected service on April 28, 2006.  On May 22, 2006, Plaintiff requested that the clerk enter default, which the clerk entered the same day.

On November 1, 2006, Plaintiff filed a motion for default judgment.  Again, the docket reflects that Ameritrade failed to oppose the motion. The Court granted in part and denied in part Plaintiff's motion for default judgment in an Order dated June 26, 2007.  On August 3, 2007, Ameritrade moved to set aside default judgment and to compel arbitration, pursuant to the terms of the Account Agreement ("Agreement"), which governed Plaintiff's brokerage account with Ameritrade.

In its moving papers, Ameritrade states that on May 26, 2006, it "submitted a letter to the

3

Court clerk seeking permission to file an enclosed Motion to Compel Arbitration and Dismiss."
Ameritrade also states that the Court failed to consider Ameritrade's motion. However, the Court
notes that a thorough review of the docket reveals no such docket entry on May 26, 2006.  In
addition, Ameritrade purports to submit a copy of this motion as an exhibit to its moving papers.
The copy of the motion Ameritrade submits was before the Court only as an attachment to
Plaintiff's motion for default judgment.  Therefore, Ameritrade's motion was never properly
before this Court.

## II.  MOTION TO SET ASIDE DEFAULT

### A.     Default Judgment Standard

In general, federal courts disfavor defaults, and where a party moves to set aside a default,
courts should decide doubtful cases in favor of the party moving to set aside a default entry "so
that cases may be decided on their merits."  United States v. $55,518.05 in U.S. Currency, 728
F.2d 192, 194-95 (3d Cir. 1984).  Federal Rule of Civil Procedure 55(c) states that "[f]or good
cause shown the court may set aside an entry of default . . . ." Fed. R. Civ. P. 55(c).  The Third
Circuit requires lower courts to consider three factors when determining whether to set aside a
default judgment under Rule 55(c):  "(1) whether plaintiff will be prejudiced if default is not
granted; (2) whether defendant has a meritorious defense; and, (3) whether defendant's delay was
the result of culpable misconduct."  $55,518.05 in U.S. Currency, 728 F.2d at 194-95.

### B.     Meritorious Defense

The Third Circuit has stated that "the threshold question in th[ese] case[s] is whether [the
defendant] . . . established a meritorious defense." Id. at 195.  Setting aside the default judgment
would be pointless if the defendant "could not demonstrate the possibility of winning."  Id.  A

4

defendant establishes a "meritorious defense when [defendant's] allegations, if established at trial, would constitute a complete defense." <u>Id.</u>  A complete defense must "allege[ ] specific facts beyond simple denials or conclusionary statements." <u>Id.</u>

Ameritrade alleges that the Agreement between the parties contains a binding predispute arbitration clause.  This clause provides, in pertinent part

> All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between Ameritrade and me shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.

(Vihstadt Dec. Ex. B ¶ 100.)  These allegations do constitute a meritorious defense. Ameritrade does not simply deny liability in a conclusory fashion but rather asserts that Plaintiff has brought his claims in the wrong forum.  While perhaps not an absolute "defense" to liability, a pre-existing agreement to arbitrate is a defense to having to defend a suit in district court.  <u>Cf.</u> <u>Dambach. v. U.S.</u>, 211 Fed. Appx. 105, 109 (3d Cir. 2006) (holding defense based on lack of subject matter jurisdiction "in essence" a meritorious defense); <u>Heartland Payment Systems, Inc v. Park</u>, Civ. No.06-3456, 2007 WL 1101447, *2 (D.N.J. Apr. 10, 2007) (holding defense of lack of personal jurisdiction to be meritorious and vacating default).  The Court finds that this factor favors setting aside the default.

## C.      Prejudice to the Plaintiff

The next question concerns whether the plaintiff will be prejudiced by lifting the default judgment.  Delay itself does not constitute prejudice, even when combined with costs of additional litigation and postponement of satisfaction of a claim.  <u>Feliciano v. Reliant Tooling Co.</u>, 691 F.2d 653, 656-57 (3d Cir. 1982).  Prejudice may result from loss of available evidence,

increased potential for fraud or collusion, or substantial reliance on the judgment.  Id. at 657.

Plaintiff argues prejudice resulting from inability to conduct meaningful discovery in an

arbitration proceeding, problems of authentication of evidence, costs of additional litigation, and

difficulty traveling to an arbitration forum in New York (the location Plaintiff alleges Defendant

has demanded).  These allegations do not establish prejudice.  As noted above, costs of litigation

alone do not create prejudice.  Plaintiff's concerns about discovery, evidence, and venue in New

York are concerns about the arbitration forum generally and do not constitute prejudice resulting

from lifting the default judgment.

D.      Defendant's Culpable Misconduct

        The final factor to consider asks whether Ameritrade's failure to respond in time was the

result of culpable misconduct.  Ameritrade asserts that the delay resulted from an oversight, and

there is no evidence that it willfully failed to respond or acted in bad faith.  See Gross v. Stereo

Component Systems, Inc., 700 F.2d 120, 123-24 (3d Cir. 1983) ("No willfulness is mirrored in

the record.").  In the absence of evidence of bad faith, this factor weighs in favor of setting aside

the default.

E.      Conclusion as to Lifting the Default

        Because Ameritrade has presented a meritorious defense, Plaintiff has not suffered

prejudice, and Ameritrade's failure to defend the suit was not the result of culpable misconduct,

the default judgment will be set aside.

III.    MOTION TO COMPEL ARBITRATION

        Ameritrade also seeks an order from the Court compelling the parties to arbitrate this

dispute.  The parties' agreement concerns a brokerage trading account, which undisputedly falls

within the definition of "commerce."  9 U.S.C. § 1.  Therefore, the Court's analysis is governed

by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

The FAA sets forth how federal courts are to interpret and give effect to arbitration

clauses.  Section 2 provides that written arbitration agreements for disputes about commercial

transactions "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA instructs

that, upon request of a party to compel arbitration, the court is to determine whether the issues

are subject to the arbitration agreement, and then " stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

The record contains evidence that Plaintiff signed an "Account Agreement" with

Ameritrade.  This Agreement incorporated a "Terms and Conditions" document, which Plaintiff

by signing the Agreement declared to have read.  The Agreement noted specifically that "[t]his

Brokerage Account Agreement contains pre-dispute arbitration clauses in the 'Terms and

Conditions'."  (Vihstadt Decl. Ex. A at 3.)  Plaintiff does not argue that he did not agree to

submit potential claims against Ameritrade to arbitration.

Plaintiff does argue that the agreement should not be enforced because Ameritrade

"reserve[d] the right to pursue all legal and equitable remedies that may be available to them."

(Pl's Opp'n at 3; Vihstadt Dec. Ex. B ¶ 101.)  He "demands to reserve the right to pursue all

legal and equitable remedies that may be available to him."  (Pl's Opp'n at 3.)  Though the

agreement does lack mutuality of remedies, a reservation of the right to seek a remedy in a

judicial forum by one party does not alone invalidate an arbitration clause.  See Delta Funding

Corp. v. Harris, 189 N.J. 28, 48 (2006) (determining that where lender reserves judicial

foreclosure remedy but only arbitration is available for mortgagee's claims, possibility that mortgagee may be "forced to litigate those substantively similar claims in two different forums" is "burdensome; however it is not unconscionable" under New Jersey law). Cf. Salley v. Option One Mortg. Corp., 592 Pa. 323 (2007) (under Pennsylvania law, reservation of judicial remedy by lender only does not render arbitration agreement unconscionable); Harris v. Green Tree Financial Corp, 183 F.3d 173, 180-81 (3d Cir. 1999). Plaintiff does not argue that the arbitration agreement is otherwise unconscionable, nor does he present any other defenses that might challenge the validity of the arbitration agreement. The Court determines that the arbitration agreement is enforceable.

Plaintiff has alleged that Ameritrade manipulated his day trading account without his knowledge or consent for its own profit. He has also alleged that Ameritrade breached its contract with him by failing to provide adequate security of his day trading account.[1] This dispute concerns transactions made from Plaintiff's Ameritrade account and Ameritrade's performance of its duties under its agreement with Plaintiff, and it falls squarely within the scope of the arbitration clause. The fact that Plaintiff's first claim is grounded in statutory rights under the Securities Exchange Act does not affect the applicability of the arbitration clause here. See, e.g., Shearson/Am. Express., Inc. v. McMahon, 482 U.S. 220, 248 (1987) (holding that claims under the Securities Exchange Act are subject to parties' agreement to arbitrate); Johnson v.

---

[1] The Court previously concluded that Plaintiff's allegations concerning violations of SEC Rule 10b-5 and Section 10b of the Securities Exchange Act did not meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) and did not state a legitimate cause of action. Huertas v. Ameritrade, Civ. No. 06-1430, 2007 WL 1851001, * 3-4 (D.N.J. June 26, 2007). As noted above, the Court denies Plaintiff's motion for reconsideration on these claims as moot. These claims have been dismissed in this action. The Court expresses no opinion on Plaintiff's ability to raise these issues in the arbitration proceedings.

West Suburban Bank, 225 F.3d 366, 370 (3d Cir. 2000) (discussing general rule that arbitration of statutory claims will not be precluded without direction from Congress).

Because Ameritrade has properly applied to compel transfer of Plaintiff's claims to arbitration, the Court therefore stays these proceedings and directs the parties to pursue arbitration.  See Lloyd v. Hovensa, LLC, 369 F.3d 263, 268-69 (3d Cir. 2004) (holding that proper interpretation of Section 3 of FAA is to stay judicial proceedings after order of arbitration, even if all claims are arbitrable).

**IV.     CONCLUSION**

Because Ameritrade has shown that it has a meritorious defense, its failure to respond was not the result of culpable misconduct, and Plaintiff has suffered no prejudice, the default judgment previously entered against it will be set aside.  Plaintiff's motion for reconsideration is denied as moot.  Furthermore, the parties are directed to arbitrate this dispute in accordance with their arbitration agreement.  Proceedings in this case will be stayed pending the outcome of arbitration.

Dated:     1/11/08                                            /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge